IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br>*Petitioner*<br><br>-vs-<br><br>THE AMERICAN RAILWAY & AIRWAY SUPERVISORS' ASSOCIATION, A DIVISION OF THE TRANSPORTATION COMMUNICATIONS UNION/IAM; AND ROLAND BELTRAN,<br>*Respondents* | §<br>§<br>§<br>§<br>§<br>§  SA-17-CV-00270-XR<br>§<br>§<br>§<br>§<br>§<br>§ |

**ORDER**

On this date, the Court considered Respondents' Motion for Attorneys' Fees (ECF No. 39) and Supplement to the Motion for Attorneys' Fees (ECF No. 40), Petitioner's objections thereto (ECF No. 41), and Respondents' reply (ECF No. 42). After careful consideration, the Court issues the following order.

**BACKGROUND**

Petitioner Union Pacific Railroad Company ("Union Pacific") filed this action to review and set aside an arbitration award under the Railway Labor Act, and Respondents[1] counterclaimed to enforce the arbitration award. The parties filed cross-motions for summary judgment. This Court granted Union Pacific's motion, denied Beltran's motion, and vacated the Public Law Board's order, finding that it violated public policy. *See* ECF No. 24. On appeal, a majority of the Fifth Circuit panel reversed, finding that the Board did not violate public policy and all other relevant

---

[1] Respondents are Roland Beltran and his labor union, the American Railway & Airway Supervisors' Association, a Division of the Transportation Communications Union/IAM. They will be referred to collectively as "Beltran."

arguments were waived. *See* ECF No. 33. The Fifth Circuit reversed this Court's order vacating the Board's order and remanded the case "for further proceedings consistent with this opinion." *See id.*

On February 12, the Court directed the parties to confer and submit an advisory as to what remained to be done in light of the Fifth Circuit's decision and mandate. *See* ECF No. 34. Thereafter, the parties filed a joint advisory, in which they agreed that the Court should issue an order granting Beltran's motion for summary judgment. *See* ECF No. 37. On March 2, 2021, the Court issued a Final Judgment denying Union Pacific's motion for summary judgment, granting Beltran's motion for summary judgment, and directing Beltran to file a motion for attorneys' fees and costs within thirty days. *See* ECF No. 38. Beltran now moves for attorneys' fees in the total amount of $171,411.25 and costs in the amount of $7,907.60. ECF No. 39-1 at 2; ECF No. 40 at 3. Union Pacific opposes the amount of fees and costs sought.

**DISCUSSION**

**I.     Legal Standard**

Federal Rule 54 provides that a party can make a claim for "attorneys' fees and related nontaxable expenses" but must specify the relevant statute or other grounds that authorizes them. *See* FED. R. CIV. P. 54(d)(A), (B)(ii). Here, neither side disputes that Beltran is entitled to attorneys' fees under the Railway Labor Act ("RLA"). The RLA provides that "if the *petitioner* shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." 45 U.S.C. § 153, First (p) (emphasis added). The Seventh Circuit has held that under the RLA, Union counter-petitioners who prevail in actions seeking enforcement of arbitration awards are entitled to reasonable attorneys' fees and costs in order to "redress imbalance in the wealth of the parties." *Burlington N. Inc. v. Am. Ry. Sup'rs Ass'n*, 527 F.2d 216, 222 (7th

Cir. 1975). This Court and the Fifth Circuit have not addressed whether prevailing respondents, as opposed to prevailing petitioners, are entitled to attorneys' fees under the RLA. Regardless, Petitioner acknowledges that the RLA "permits a union that prevails in an action to enforce an arbitration award to recover … 'reasonable' attorneys' fees." ECF No. 41 at 1. The Court thus treats Beltran's entitlement to fees as undisputed.

The district court has discretion in determining the amount of attorneys' fees awarded under the RLA. *Gibbs v. Gibbs*, 210 F.3d 319, 335 (5th Cir. 1995); *United Transp. Union v. Soo Line R.R. Co.*, 457 F.2d 285, 288–89 (7th Cir. 1972). The district court should use the "lodestar" method to calculate reasonable attorneys' fees. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010). To use the lodestar method, the court calculates the base amount of attorneys' fees to which a party is entitled by multiplying the number of hours the attorneys reasonably worked by the prevailing hourly rate. *Id.* This sum, or lodestar amount, is strongly presumed to be the reasonable amount to which the prevailing party is entitled. *Id.* at 550–52. However, the prevailing party has the burden of establishing the reasonableness of the award. *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).

In determining the number of hours the attorneys reasonably worked, the district court should not include hours that are improperly documented, redundant, or excessive. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). To determine if hours are reasonable, the district court must consider whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Additionally, the prevailing party seeking attorneys' fees bears the burden of showing the proper use of "billing judgment," or the process by which attorneys write off duplicative, unproductive, or excessive hours. *Walker v.*

*United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). To prove proper billing judgment was used, the prevailing party must show documentation of both hours charged and hours written off. *Saizan v. Delta Conrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Absent documentation showing the proper use of billing judgment, the district court should reduce the attorneys' fees awarded by "a percentage intended to substitute for the exercise of billing judgment." *Id.*

The market rate for comparable service by lawyers of similar experience, skill, and reputation is considered the prevailing rate for the purposes of the lodestar calculation. *McClain*, 649 F.3d at 381 (citing *Blum v. Stevenson*, 465 U.S. 886, 889 (1983)). The relevant market for the purposes of determining the prevailing rate to be used in the lodestar calculation is the market in which the district court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citing *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998)). However, where it was necessary for the prevailing party seeking attorneys' fees to use out-of-town lawyers, the district court should use the standard rate from the out-of-town market to calculate the base lodestar amount instead. *McClain*, 649 F.3d at 382–83.

After determining the base lodestar amount, the court has discretion to adjust the attorneys' fee award according to the factors enumerated in *Johnson v. Georgia Highway Express*. The "*Johnson* factors" are:

> (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the requisite skill to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*E.g., Black v. SettlePou, P.C.*, 732 F.3d 492, 502 n.7 (5th Cir. 2013) (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The Court may not consider *Johnson* factors it already used for the purpose of calculating the lodestar amount. *Black*, 732 F.2d at 503.

## II. Analysis

### A. Lodestar

Beltran seeks to recover $171,411.25 in attorneys' fees based on a total of 508.75 reported hours of work relating to the litigation. ECF No. 39-1 at 2; ECF No. 40 at 3. In support of this lodestar amount, Beltran submitted a declaration from counsel Jeffrey A. Bartos, a billing statement, and information about the prevailing rates for attorneys in both the Texas and Washington, D.C. markets. ECF No. 39-2. Beltran also submitted a supplemental appendix listing further costs arising from drafting and submitting the Motion for Attorneys' Fees and Expenses. ECF No. 40. Union Pacific argues this lodestar amount is unreasonable because the hours billed by Beltran's counsel were excessive, redundant, and improperly documented. ECF No. 41 at 1–2. Further, Union Pacific argues the rates Beltran used to calculate the lodestar amount are not reasonable because they exceed the prevailing rates of the Texas market. *Id.* at 11.

#### 1. Hours

Union Pacific argues that Beltran's counsel's hours should be reduced because they were excessive. For example, Union Pacific points to the fact that its counsel billed 70% fewer hours than Beltran's counsel. *Id.* at 6–7. Further, Union Pacific argues that Beltran's counsel's hours are unreasonable on the basis of redundancy and overstaffing. *Id.* at 3–4. While Union Pacific had three timekeepers work on this matter, Beltran employed ten. *Id.* at 3. Additionally, Union Pacific points to the fact that multiple experienced attorneys spent time working on this matter on the same days as evidence of duplicative hours. *Id.*

5

The Court has reviewed the billing statement from Guerrieri, Bartos & Roma, PC, and finds that the following entries are duplicative:

| Date | Services Rendered | Timekeeper | Hours |
|---|---|---|---|
| 04/27/17 | Review and revise answer and counterclaim; office conferences re same. | Mr. Guirierri | 1.25 |
| 05/02/17 | Prepare for and participate in conference call with C. Siegel, R. Beltran re litigation strategy. | Mr. Clayman | 0.50 |
| 05/09/17 | Review order re initial conference; office conference re proposed dates and strategy; call with UP counsel | Mr. Bartos | 1.00 |
| 08/11/17 | Revise summary judgment brief in support of motion for summary judgment | Mr. Bartos | 2.50 |
| 08/17/17 | Review and revise motion and brief; office conference re same. | Mr. Bartos | 1.00 |
| 01/29/18 | Review district court order vacating arbitration award; office conference re briefing; emails with TCU re decision and appeal issue | Mr. Bartos | 1.00 |
| 01/29/18 | Review District Court decision; office conference re same and appeal; review email re same. | Mr. Guirierri | 0.75 |
| 04/10/18 | Research and draft memo on Supreme Court standard on Circuit split on non-statutory challenges to Board. | Mr. Grunert | 3.50 |
| 04/12/18 | Review and revise brief; office conference re briefing. | Mr. Bartos | 1.00 |
| 05/07/18 | Review court notice re paper filing of record excerpts and office conference re same | Ms. Parcelli | 0.25 |
| 06/05/18 | Review court notice re appellee's brief; begin outlining reply brief | Ms. Parcelli | 0.50 |
| 12/17/20 | Review Fifth Circuit decision; email re same; teleconference with E. Pantoja; review of statute re attorneys' fees provisions; direct research re fee application | Mr. Bartos | 1.25 |

Union Pacific contends that the hours Beltran's counsel spent briefing arguments directly contrary to Fifth Circuit precedent and arguments that were ultimately unsuccessful should not be included. ECF No. 41 at 7–8. An ultimately prevailing party may not bill for time spent on those issues on which it did not prevail. *Walker*, 99 F.3d at 769 (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 784 (1989)). However, where the claims for relief "involve a common core of facts" or are "based on related legal theories," the district court should not view the lawsuit "as a series of discrete claims" and should instead "focus on the significance of the overall relief obtained by [Beltran] in relation to the hours reasonably expended on the

litigation." *Hensley*, 461 U.S. at 435.

First, Beltran did not prevail on the argument that Union Pacific waived its public policy argument by not raising it with the arbitration panel. ECF No. 24 at 24–25. This argument is distinguishable from the argument that Union Pacific waived its jurisdictional argument by not raising it with the arbitrator, which ultimately did prevail. ECF No. 33 at 9–10. Second, Beltran did not prevail on the argument that public policy review of arbitration awards under the RLA is unavailable. *Id.* at 5–6. Beltran's counsel spent 6.25 hours on the waiver of public policy argument on August 1, 2017 and an additional .5 hours on that matter on August 13, 2017. ECF No. 39-2 at 18. Additional hours were spent by counsel on briefing the unavailability of public policy as grounds for refusing to enforce arbitration awards under the RLA in April 2018; however, it is impossible to accurately determine the number of hours spent on this argument due to the use of vague billing entries. *Id.* at 21–22. Reduction of hours based on improper billing documentation is discussed below. Overall, hours spent on these unsuccessful legal theories were relatively few compared to the total number of hours Beltran spent successfully litigating this matter. Moreover, the unsuccessful theories were related, alternative theories to the issues on which Beltran did prevail. Therefore, these hours should be included as part of "related legal theories" to those on which Beltran relied to ultimately wholly prevail.

Union Pacific also asserts that clerical time is not properly included as part of the attorneys' fees award. ECF No. 41 at 10. Clerical work done by attorneys should be billed at a different rate than legal work for the purposes of determining attorneys' fees, which will be addressed below. *Walker v. U.S. Dept. of Housing & Urban Development*, 99 F.3d 761, 770–71 (5th Cir. 1996). Additionally, "paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical." *Vela v. City of Houston*, 276 F. 3d 659, 681 (5th Cir. 2001) (citing *Allen v. U.S.*

7

*Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982)). Thus, the hours paralegal Maria O'Keefe spent on clerical work should not be included in the lodestar calculation.[2]

In addition, Union Pacific contends that Beltran's counsel's hours were improperly documented and should be reduced accordingly. Beltran used a block billing system of record keeping under which all time worked on the case per day was recorded as a single time entry; no time-based distinctions were made for work done on different parts of the case during each day. *See* ECF No. 39-2; ECF No. 40. As a result, and, as seen above regarding hours spent on briefing the availability of public policy arguments as grounds for nonenforcement of an arbitration award under the RLA, it is difficult to distinguish specific hours spent on certain tasks.

This jurisdiction has reduced attorneys' fees by a percentage due to the inconvenience imposed on determining reasonableness of hours through the use of block billing. *See Chacon v. City of Austin*, No. A-12-CA-226-SS, 2015 WL 413861, at *6 (W.D. Tex. July 8, 2015) (reducing the total number of hours used in the lodestar calculation by 10% due to the use of block billing). However, the use of block billing does not automatically necessitate a reduction in hours or fees as long as the documentation provided is sufficient to determine whether the hours are reasonable. *Kellstrom*, 50 F.3d at 325 (citing *Heasley v. Comm'r*, 967 F.2d 116, 123 (5th Cir. 1992)). Because Beltran's counsel's extensive use of block billing makes it difficult to determine whether the hours billed are reasonable,[3] a blanket reduction of 10% should be applied to those hours for the purposes of calculating the lodestar.

---

[2] The hours paralegal Maria O'Keefe spent on clerical work include 1.25 hours on August 20, 2017 billed as "proofread and cite check brief," 1.5 hours on August 21, 2017 billed as "edit and cite-check brief," .75 hours on August 22, 2017 billed as "edit and cite-check brief," and .5 hours on April 27, 2018 billed as "bate stamp documents."

[3] For example, block billed entries dating from April 14, 2017 to April 27, 2017 indicate that three attorneys, each with over 25 years of experience in litigation, spent up to 23.25 hours revising a counterclaim of 8 substantive pages; however, it is impossible to tell how much of this revision work was duplicative and how much of those 23.25 hours were spent on other work due to the use of block billing. *See* ECF No. 39-2 at 12–14; ECF No. 39-1 at 3–4; ECF No. 5.

Further, Union Pacific contends hours billed with vague descriptions should not be included for the purpose of calculating the lodestar. ECF No. 41 at 8–9. The district court may remove hours used in the lodestar calculation when the documentation supporting those hours is "too vague to permit meaningful review." *Kellstrom*, 50 F.3d at 326 (citing *Leroy v. City of Houston*, 906 F.2d 1068, 1080 (5th Cir. 1990)). In *Leroy*, the Fifth Circuit struck hours billed for "work on brief," "continue work on brief," and "review for oral argument." *Leroy*, 906 F.2d at 1080. In *Kellstrom*, the Fifth Circuit reduced fees for hours with billing descriptions such as "revise memorandum," "review pleadings," "review documents," and "correspondence." *Kellstrom*, 50 F.3d at 326 n.11. In deferring to the district court's discretion, the court in *Kellstrom* noted the lack of a clear standard for determining whether a billing description is too vague as well as the district court's familiarity with the attorneys' work. Further, the court acknowledged practical limitations "preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *Id.* at 326–27.

Weighing these considerations, billing entries documented as "review additional documents," "review documents," "research," "review record," "research cases," and "research and review cases, regulations" elude meaningful review despite any familiarity this Court may have with the attorneys' work on this case. These entries should be removed from the lodestar calculation. Many of these overly vague entries are block billed with others, making it impossible to tell exactly how much time was spent on each. *See* ECF No. 39-2. These entries[4] should be removed in whole because "litigants take their chances when submitting such fee applications, as they provide little information from which to determine the 'reasonableness' of the hours expended." *Kellstrom*, 50 F.3d at 327.

---

[4] These entries include hours billed by Mr. Clayman on April 17, May 11, June 27, June 29, July 13, July 24 of 2017 for a total of 19 hours.

Union Pacific also argues that Beltran did not properly document the use of billing judgment. ECF No. 41 at 10–11. Beltran's counsel reviewed and struck unproductive hours before submitting their Motion for Attorneys' Fees. *See* ECF No. 39-2 at 6. However, proper documentation of the use of billing judgment requires both documentation of the hours charged and the hours written off as duplicative or excessive. *Saizan*, 448 F.3d at 799. There was no documentation of hours that were written off submitted with the motion. Fifth Circuit precedent dictates that a 10% reduction of the base lodestar amount will appropriately remedy their failure to include evidence of the use of billing judgment. *Id.*

Finally, the hour billed by Mr. Bartos on June 5, 2018 should be excluded from any award of attorneys' fees because it presumably pertains to a different case involving a different railroad. ECF No. 39-2 (billing entry for "BSNF" as opposed to Union Pacific).

    2.  *Rates*

Union Pacific argues that Beltran's counsel's rates should be lowered in accordance with the prevailing rates of the San Antonio market. ECF No. 41 at 11. The prevailing market rate used for determining the attorneys' fee award to be paid is the prevailing rate of the market in which the district court sits. *Tollett*, 285 F.3d at 368. Although the prevailing rates of different markets may be used to calculate attorneys' fees when a party was unable to obtain local counsel, there is no evidence to indicate it was necessary for Beltran to use attorneys from Washington, D.C. *See McClain*, 649 F.3d at 382–83 (holding the district court did not abuse its discretion in using local prevailing rates to determine attorneys' fees when the prevailing party had not shown that the use of out-of-town attorneys was "necessary to the representation of the plaintiff class"). Accordingly, the latest data regarding the average hourly rates for attorneys provided by the State Bar of Texas

should be used to calculate the lodestar. *See, e.g., Alex v. KHG of San Antonio,* LLC, 125 F. Supp. 3d 619, 625–26 (W.D. Tex. 2015).

The State Bar of Texas data provides that the average labor and employment attorney working in San Antonio made $258 per hour in 2015. ECF No. 39-2 at 45. Data regarding labor and employment attorneys was not broken down based on experience. *Id.* Alternatively, average rates in San Antonio were $200 per hour for attorneys with 0–6 years of experience, $250 per hour for attorneys with 11–15 years of experience, $284 per hour for attorneys with 16–20 years of experience, $288 per hour for 20–25 years of experience, and $300 per hour for attorneys with more than 25 years of experience. *Id.* at 47. The most recent Texas State Bar data on hourly rates for attorneys is over five years out of date; however, it shows median hourly rates for attorneys in San Antonio rose by 11.1% from 2013 to 2015. *Id.* at 43. Given this trend and the fact that Beltran's counsel performed the majority of their work on this case in 2017 and 2018, it is appropriate to adjust the average rates contained in the Texas State Bar data upwards by roughly 15% for the purpose of calculating the lodestar. *See* ECF No. 39-2; *Alex*, 125 F. Supp. 3d at 625.

The billing rates should be adjusted as follows: Mr. Clayman, Mr. Bartos, and Mr. Guirrieri's work should be billed at $345 per hour; Ms. Parcelli's work should be billed at $290 per hour for work done in 2017 and at $325 per hour for work done in 2018; Ms. Roma's work should be billed at $325 per hour; Ms. Brumfield, Mr. Grunert, and Ms. Bird's work should be billed at $230 per hour.

Because "clerical work should be compensated at a different rate from legal work," Ms. Brumfield should not receive the $230 per hour rate for her work documented as "compile record excerpts." *Walker*, 99 F.3d at 770. In *Walker*, the Fifth Circuit awarded attorneys' roughly two-thirds of their usual rates for performing clerical work. *Id.* at 770-71 (awarding $175 instead of

11

$275 hourly and $90 instead of $125 hourly to attorneys performing clerical work). Accordingly, Ms. Brumfield should receive $150 hourly for clerical work she performed.[5]

Finally, the time Ms. Parcelli billed for "travel to New Orleans" and "travel from New Orleans" should command a lower rate. Ms. Parcelli billed for 21 hours of work that included travel. *See* ECF No. 39-2 at 24. The party seeking an attorneys' fees award has the burden of establishing their reasonableness. *Riley*, 99 F.3d at 760. In their billing documentation, Beltran does not establish that Ms. Parcelli actually performed any substantive legal work during the time she spent traveling. *See* ECF No. 39-2 at 24. Further, as Union Pacific points out, it is highly unlikely Ms. Parcelli would have worked on Beltran's case while returning from an oral argument. ECF No. 41 at 12. Accordingly, Ms. Parcelli's travel hours should be billed at 50% her usual rate.[6] *See In re Babcock & Wilcox*, 526 F.3d 824, 826–28 (5th Cir. 2008) (holding a reduction of 50% in rate during travel hours was an appropriate use of discretion by the district court awarding attorneys' fees).

With respect to the hour and rate adjustments detailed above, the lodestar should be revised to $110,252.25 as detailed below:

| Attorney | Adjusted Hours[7] | Adjusted Rate | Total Fees |
|---|---|---|---|
| Mr. Clayman | 225.25 hours<br>- 19 overly vague hours<br>- 0.5 duplicative hours<br>- 6.25 losing strategy hours<br>- 10% block billing<br>= **179.75 hours** | $345/hour | $62,013.75 |

---

[5] These entries include 3.75 hours on April 25, 2018, 3.5 hours on April 27, 2018, and 2 hours on May 7, 2018. ECF No. 39-2 at 23. Although Ms. Brumfield's billing description for May 7, 2018 also includes "review local rules," the entire entry should be billed at the lower rate because it is impossible to differentiate the time spent on each task due to the use of block billing.

[6] Ms. Parcelli's billing entries that include travel time also include entries such as "outline oral argument" and "continue case law review." Because the use of block billing makes it impossible to determine how much time was spent traveling versus working on these other items, Ms. Parcelli's rate should be discounted for these entire entries.
[7] Number of hours is calculated using ECF No. 39-2 and ECF No. 40 and rounding to the nearest quarter hour.

| | | | |
|---|---|---|---|
| Mr. Bartos | 82.75 hours<br>- 1 erroneously billed hour<br>- 7.75 duplicative hours<br>- 0.5 losing strategy hours<br>- 10% block billing<br>= **66.25 hours** | $345/hour | $22,856.25 |
| Mr. Guirierri | 3.5 hours<br>- 2 duplicative hours<br>- 10% block billing<br>= 1**.5 hours** | $345/hour | $517.50 |
| Ms. Parcelli | .5 hours in 2017<br>- 10% block billing<br>= **.5 hours in 2017** | $290/hour | $145.00 |
| | 94.5 hours in 2018<br>- 0.75 duplicative hours<br>- 10% block billing<br>= **84.5 hours in 2018** | $325/hour | $27,462.50 |
| | 21 travel hours in 2018<br>- 10% block billing<br>= **19 travel hours** | $162.50/hour | $3,087.50 |
| Ms. Roma | 1.5 hours<br>- 10% block billing<br>= **1.5 hours** | $325/hour | $487.50 |
| Ms. Brumfield | 1 hour<br>- 10% block billing<br>= **1 hour** | $230/hour | $230.00 |
| | 9.25 hours clerical work<br>- 10% block billing<br>= **8.5 hours clerical work** | $150/hour | $1,275.00 |
| Mr. Grunert | 9.75 hours<br>- 3.5 duplicative hours<br>- 10% block billing<br>= **5.75 hours** | $230/hour | $1,322.50 |
| Ms. Bird | 14.75 hours<br>- 10% block billing<br>= **13.5 hours** | $230/hour | $3,047.50 |
| **Total** | **381.75 hours** | | $122,502.50<br>- 10% billing judgment<br>= **$110,252.25** |

### B.     *Johnson* Factors

Next this Court must consider whether the *Johnson* factors warrant adjusting the lodestar amount of $110,252.25. This Court may not reconsider factors it used in determining the appropriate lodestar, as the *Johnson* factors are intended to complement the lodestar. *Black*, 732 F.2d at 502–03. Factors already directly and indirectly considered in the lodestar calculation

13

include the customary fee for similar work in the community, the amount of work involved and the results obtained, the nature and length of the professional relationship with the client, and awards in similar cases.

The lodestar should be adjusted based on the *Johnson* factors "only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Contrary to Petitioner's contention, there is nothing exceptional about the hours and labor Beltran's counsel expended on this case to ultimately prevail. Further, both the undesirability of this case, given the disparity in resources between the parties, and its complexity—involving arbitration, the RLA, drug regulations, multiple-cross motions and briefs, and an oral argument—weigh against any downward adjustment.

## C. Costs Under 28 U.S.C. § 1920

As the prevailing party, Beltran seeks $7,907.60 in costs pursuant to Federal Rule of Civil Procedure 54(d). Rule 54(d) provides that costs "shall be allowed as of course to the prevailing party." Section 1920 defines the term "costs" as used in Rule 54(d) and enumerates the expenses that a federal court may tax as a cost under the authority found in Rule 54(d). *Gaddis v. United States*, 381 F.3d 444, 450 (5th Cir. 2004); *see also Crawford Fitting Co. v. Gibbons*, 482 U.S. 437, 441 (1987). Thus, unless otherwise authorized by statute, the types of costs that may be awarded under Federal Rule of Civil Procedure 54(d) are limited to those enumerated in 28 U.S.C. § 1920. *Id.* Section 1920 provides,

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where

the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

*1. Court Fees*

Beltran seeks an award of $761.00 for court fees. ECF No. 39-2 at 26. The Court thus awards $761.00 for court fees. *See* 28 U.S.C. § 1920(1).

*2. Printing Costs*

Beltran seeks an award of $1,130.63 for photocopying costs which are described in the itemization of expenses as "Photocopying," "Outside Document Reproduction," and "Outside Reproduction." ECF No. 39-2 at 25–27. The district court may award "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). However, the court "requires some demonstration that reproduction costs necessarily result from [the] litigation." *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991). "Although prevailing parties do not have to justify every single photocopying cost, they do have to provide enough information for the [c]ourt [to be] able to make a reasonable determination of necessity." *Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 584 (W.D. Tex. 2010). However, it is inevitable that some of the copying costs were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Accordingly, the costs requested for photocopies should be reduced by half. *See Chenault v. Dorel Indus., Inc.*, No. A-08-CA-354-SS, 2010 WL 3064007, at *3 (W.D. Tex. Aug. 2, 2010) ("Because the Court cannot make a reasonable determination in this instance that all the claimed costs were necessary based on the evidence that has been submitted, and because the printing and photocopying costs appear on their face to be excessive

for a relatively simple products liability case, the [c]ourt finds the costs claimed in this category should be reduced by half, to account for the fact that they may include multiple copies of the same documents, not all of which were strictly necessary.")

### 3. *Postage, Long-Distance Calls, Courier, Legal Research, and Travel Costs*

Finally, Beltran seeks an award of $10.30 for postage, $43.47 for long-distance phone calls, $485.94 for courier services, $4,723.05 for legal research, and $689.90 in travel expenses, totaling $5,960.88. ECF No. 39-2 at 25–27. None of these expenses are recoverable under Section 1920, however, because they are not enumerated in the statute. *See Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.*, 952 F. Supp. 415, 418 (N.D. Tex. 1997) (charges for postage, long-distance phone calls, courier services, and legal research are not recoverable under Section 1920). Beltran also seeks an award of $689.90 for travel expenses incurred in connection with its oral arguments before the Fifth Circuit. ECF No. 39-2 at 27. As with the expenses listed above, however, the travel expenses of attorneys are not recoverable under Section 1920. *See Embotelladora Agral Regiomontana, S.A. de C.V.*, 952 F. Supp. at 418 (citing *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993)). Although none of these costs are compensable under Section 1920, they may be recoverable as litigation expenses pursuant to the cost-shifting provisions of the RLA. *See* 45 U.S.C. § 153, First (p).

### D. Litigation Expenses Under 45 U.S.C. § 153

Beltran requests a total award of $5,960.88 in litigation-related expenses that are not recoverable under Section 1920, including $10.30 for postage, $43.47 for long-distance phone calls, $485.94 for courier services, $4,723.05 for legal research, and $689.90 in travel expenses. *See* ECF No. 39-2 at 27; ECF No. 40 at 8. Rule 54(d)(2) allows a party to recover "related nontaxable expenses" in addition to attorneys' fees. FED. R. CIV. P. 54(d)(2). However, as with

16

attorneys' billed hours, "the governing substantive law dictates recoverable expenses." *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 n.61 (5th Cir. 2001).

The RLA allows the prevailing party to recover a "reasonable attorney's fee, to be taxed and collected as *part of* the costs." 45 U.S.C. § 153, First (p) (emphasis added). The Fifth Circuit has held that similar language in Title VII awarding "reasonable attorney's fee as *part of* the costs" allows a prevailing party to recover "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." 42 U.S.C. § 2000e-5(k) (emphasis added); *Mota*, 261 F.3d at 529. These reasonably related expenses include "postage, photocopying, paralegal services, long distance telephone charges, and travel costs." *Mota*, 261 F.3d at 529.

Similarly, Section 216(b) of the Fair Labor Standards Act ("FLSA") provides that the court shall "allow a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b). Courts in the Fifth Circuit have determined that "[r]eimbursement for travel, meals, lodging, photocopying, long-distance phone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are the types of litigation expenses that are recoverable under the FLSA as part of an attorneys' fee award." *Hilton v. Exec. Self Storage Assocs.*, No. H-06-2744, 2009 WL 1750121, at *16 (S.D. Tex. June 18, 2009) (citing *Quintanilla v. A & R Demolition Inc.*, No. H–04–1965, 2008 WL 9410399, at *9 (S.D. Tex. May 7, 2008)).

The Supreme Court has concluded that, when Congress uses the same phrasing in two similar statutes, it intends that phrasing to have the same meaning in both statutes. *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005) (citation omitted). Title VII, the FLSA, and the RLA all contain fee- and cost-shifting provisions that contemplate the recovery of costs other than attorneys' fees, and are similar in that they all relate to labor and employment matters.

Accordingly, the Court concludes that the same recovery for litigation-related expenses available under Title VII and the FLSA should be available under the RLA. These expenses include postage, long-distance phone calls, courier services, and legal research services. *See Mota*, 261 F.3d at 529; *Hilton*, 2009 WL 1750121, at *16.

Although the Court has broad discretion in determining an appropriate award of costs, *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000), "items proposed by winning parties as costs should always be given careful scrutiny." *Kellstrom v. La. Power & Light Co.*, 50 F.3d 319, 335 (5th Cir. 1995) (citing *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964)). Courts are free to decline to award costs where the expenses are not deemed to have been "reasonably necessary" to the litigation. *Alex*, 125 F. Supp. 3d at 630 (quoting *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997)). Union Pacific argues that the requested award for postage, courier services, long-distance phone calls, and legal research services such as Lexis, Westlaw, and Pacer should be denied because Beltran failed to provide relevant rates or evidence establishing that they were necessary to the litigation. ECF No. 41 at 13. Union Pacific is correct that Beltran has not offered any evidence justifying these litigation expenses and, thus, the Court cannot make a reasonable determination in this instance that all the claimed expenses were "reasonably necessary" to the litigation. *Cypress-Fairbanks*, 118 F.3d at 257. Still, because it is inevitable that some of these expenses were necessary to the litigation, the Court finds that the expenses in these categories should be reduced by half to account for the possibility that certain costs may have been duplicative or incurred unnecessarily. *See Chenault*, 2010 WL 3064007, at *3. The expenses incurred in connection with travel to New Orleans for oral argument before the Fifth Circuit are fully recoverable, however, because it is clear why they were "reasonably necessary" to the litigation. *Cypress-Fairbanks*, 118 F.3d at 257.

## CONCLUSION

For the foregoing reasons, Beltran's Motion for Attorneys' Fees (ECF No. 39) is **GRANTED IN PART AND DENIED IN PART**. Union Pacific is **ORDERED** to pay $110,252.25 in attorney's fees and $4,651.71 in costs and litigation expenses.

It is so **ORDERED**.

SIGNED this June 15, 2021

                                                XAVIER RODRIGUEZ
                                                UNITED STATES DISTRICT JUDGE